**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| MARJORIE TYLKE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>REAL TIME RESOLUTIONS, INC.<br><br>Defendant. | Case No.: 15-cv-698<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for outrageous collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"). Defendant Real Time Resolutions, Inc. ("Real Time") purchases and attempts to collect defaulted first and second mortgage loans nationwide. In doing so, Real Time fails to calculate and ignores the applicable statutes of limitations, continuing to collect after the statute of limitations has expired. Real Time also misrepresents how a payment would be applied to the consumer's account by deceptively stating or implying that a payment would be applied primarily to principal, when it would, in fact, be applied to arrearages which are primarily comprised of interest and fees. Real Time's conduct has the effect of scaring consumers, who see the loan balance rising out of control, into making a payment, which resets the statute of limitations. Real Time's conduct is unmistakably confusing, misleading and deceptive, and is the type of conduct that the FDCPA was intended to prohibit.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Marjorie Tylke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Real Time Resolutions, Inc. ("Real Time") is a foreign corporation with its principal place of business located at 1349 Empire Central Drive, Suite 150, Dallas, Texas 75247-4029.

6. Real Time is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Real Time is in the business of purchasing and collecting debts, incurred for personal, family or household purposes, which are in contractual default at the time of purchase. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003).

8. Real Time took assignment of the alleged debt referred to in this action, after the account was allegedly in default.

9. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 536, *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

10. With respect to the Plaintiff and the Class, Real Time is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### Tylke's Mortgage Loan and Payments

11. In 2004 and for some time prior, at least back to 2001, Plaintiff had been obligated to pay two mortgage loans on Plaintiff's principal residence at 3668 East Martin Ave., Cudahy, Wisconsin 53110.

12. Upon information and belief, the mortgage loan at issue in this action (hereinafter, the "mortgage loan") was junior to the primary mortgage encumbering the property.

13. Upon information and belief, the mortgage loan was held in trust and was serviced by Ocwen Federal Bank, FSB ("Ocwen") up to February 2004.

14. On or around February 24, 2004, the servicing of Plaintiff's mortgage loan was assigned to Real Time.

15. At the time Ocwen transferred serving rights for Plaintiff's loan to Real Time, the mortgage loan was in default. Plaintiff was several monthly payments behind.

16. Tylke had filed a chapter 13 bankruptcy petition on October 10, 2002, which was still pending in February 2004. Ocwen transferred the serving rights for the mortgage loan to Real Time during the pendency of the bankruptcy case. The bankruptcy case was closed after successful completion of the plan on June 13, 2006.

17. After the 2002 bankruptcy, Tylke made regular, but not perfectly regular, payments to Real Time until November 2006. Tylke last made a payment on the loan on November 17, 2006.

18. Tylke filed a second chapter 13 bankruptcy petition on April 10, 2008. Bk. Case No. 08-23482-svk (E.D. Wis. *filed* Apr. 10, 2008).

19. During the pendency of the second bankruptcy case, the trustee disbursed one payment to Real Time on December 12, 2008.

20. The payment by the bankruptcy trustee on December 12, 2008 was the last payment made by anyone to Real Time on Tylke's loan.

21. Tylke's bankruptcy case was dismissed on February 9, 2009, and closed on April 2, 2009.

22. Tylke and her husband made no more payments to Real Time at any time.

23. Tylke and her husband are elderly retirees. They are "judgment-proof" and likely will be so for the remainder of their lives.

24. The Tylkes have not lived in the property at issue here for several years. The property was sold to a third party on June 18, 2010. *See* http://apserver02.ci.cudahy.wi.us/Scripts/GVSWeb.dll/Card?Community=0&Parcel=6320649 (visited June 5, 2015).

**Real Time Collection Letters**

25. From at least January 2014, and likely earlier, Real Time has regularly mailed debt collection letters to Plaintiff regularly regarding the alleged debt.

26. Each of these letters miscalculates and misrepresents the amount due by adding the portion of the monthly payment that would be applied to the principal to the total balance.

27. For example, on or around October 11, 2014, Real Time mailed Tylke a debt collection letter regarding the mortgage loan. A copy of this letter is attached to this complaint as Exhibit A.

28. Exhibit A includes the following breakdown of the purported "amount due."

| Explanation of Amount Due | |
|---|---|
| Principal | $313.66 |
| Interest | $104.33 |
| Escrow (Taxes and Insurance) | $0.00 |
| **Regular Payment** | **$417.99** |
| Total Fees and Charges | $1,845.10 |
| Overdue Payment(s) | $38,455.08 |
| **Total Amount Due** | **$40,718.17** |

29. On or around November 11, 2014, Real Time mailed Tylke another debt collection letter regarding the mortgage loan. A copy of this letter is attached to this complaint as Exhibit B.

30. Exhibit B includes the following breakdown of the purported "amount due."

| Explanation of Amount Due | |
|---|---|
| Principal | $316.40 |
| Interest | $101.59 |
| Escrow (Taxes and Insurance) | $0.00 |
| **Regular Payment** | **$417.99** |
| Total Fees and Charges | $1,866.00 |
| Overdue Payment(s) | $38,873.07 |
| **Total Amount Due** | **$41,157.06** |

31. The "total amount due" stated in Exhibit B is the "total amount due" in Exhibit A, plus the total "Regular Payment" in Exhibit B, plus a $20.90 late charge.

32. In Exhibit A, Real Time identified $313.66 as being the portion of the monthly payment attributed to the principal.

33. The principal amount of a mortgage loan on real property, however, does not rise if a payment is not made. It remains the same.

34. Thus, the "Total Amount Due" in Exhibit B should increase only by the amount of unpaid interest and late fees. In this example, that amount would be $122.49.

35. Likewise, on or around December 11, 2014, Real Time mailed Tylke a debt collection letter regarding the mortgage loan. A copy of this letter is attached to this complaint as Exhibit C.

36. Exhibit C includes the following breakdown of the purported "amount due."

| **Explanation of Amount Due** | |
|---|---|
| Principal | $319.17 |
| Interest | $98.82 |
| Escrow (Taxes and Insurance) | $0.00 |
| **Regular Payment** | **$417.99** |
| Total Fees and Charges | $1,886.90 |
| Overdue Payment(s) | $39,291.06 |
| **Total Amount Due** | **$41,595.95** |

37. The "total amount due" stated in Exhibit C is the "total amount due" in Exhibit B, plus the total "Regular Payment" in Exhibit C, plus a $20.90 late charge.

38. Again, Real Time has added the "principal" portion of the monthly payment amount to the "Total Amount Due."

39. The "Total Amount Due" in Exhibit C should increase only by the amount of unpaid interest and late fees, here, $119.72.

40. The same miscalculations occurred over the next few months. Copies of additional debt collection letters sent in January through May 2015 are also attached to this complaint as Exhibits D-H.

41. Each of the letters is confusing and misleading to the unsophisticated consumer.

42. Exhibits A-H are deceptively designed to make the consumer believe that a payment would actually be applied mainly to the principal of the loan. This impression is false and misleading.

43. Upon information and belief, almost 100% of any payment in the amounts requested in Exhibits A-H made to Real Time on any class member's loan would actually be applied to arrearages, which primarily consist of interest and fees.

44. Exhibits A-H are also deceptively designed to fool the consumer into making a payment to reset the applicable statute of limitations.

**Statute of Limitations**

45. Real Time mailed Exhibits G and H to Tylke after the statute of limitations had run on the mortgage loan.

46. The statute of limitations for actions on contracts in Wisconsin is six years. Wis. Stat. § 893.43; *Hennekens v. Hoerl*, 160 Wis. 2d 144, 159, n.12, 465 N.W.2d 812, 818 n.12 (1991) ("a creditor has six years to commence an action on a promissory note").

47. Real Time, as loan servicer, was immediately aware that Tylke had stopped making payments on the mortgage loan in November 2006.

48. Real Time is aware that the last payment on the mortgage loan was made by the bankruptcy trustee on December 8, 2008.

49. The statute of limitations was tolled during Tylke's second bankruptcy case, pursuant to 11 U.S.C. § 108(c):

> (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

50. Tylke's second bankruptcy case was closed on April 2, 2009. The statute of limitations then began to run and expired six years later, on April 3, 2015.

51. Real Time mailed Exhibit G to Tylke on or around April 11, 2015, after the statute of limitations had run.

52. Real Time mailed Exhibit H to Tylke on or around May 11, 2015, also after the statute of limitations had run.

53. Under Wisconsin law, the expiration of the statute of limitations extinguishes the debt. Wis. Stat. § 893.05 ("**Relation of statute of limitations to right and remedy.** When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.").

54. Thus, attempts to collect a time-barred debt in Wisconsin are attempts to collect debts that no longer exist, in violation of the FDCPA. 15 U.S.C. § 1692e(2)(a); Wis. Stat. § 427.104(1)(j); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable).

**The FDCPA**

55. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

56. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

57. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

58. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

59. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

60. Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

**COUNT I – FDCPA**

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Real Time attempted to collect Plaintiff's alleged debt after the statute of limitations had run.

63. The expiration of the statute of limitations on April 3, 2015, extinguished the debt. Wis. Stat. § 893.05.

64. Exhibits G and H attempt to collect a debt that does not exist.

65. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

**COUNT II – FDCPA**

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Real Time misrepresented the payment breakdown in Exhibits A-H.

68. Real Time misrepresented the amount of a monthly payment that would be applied to principal. In fact, the vast majority of any monthly payment sent to Real Time would be applied to arrearages, which are primarily amounts comprised of interest and fees.

69. The misrepresentations were intentional. The misstatements of the principal portions of monthly payments in Exhibits A-H are designed to fool consumers into paying on old and time-barred debts, and to fool consumers into believing that the principal balance of the loan was increasing when in actuality, only interest and fees were increasing.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

71. Plaintiff brings this action on behalf of two Classes.

72. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the forms represented by Exhibits A, B, C, D, E, F, G, or H to the complaint in this action, (c) seeking to collect a debt, owed to Real Time, that was assigned to Real Time after default, (d) incurred for personal, family or household purposes, (e) after the six year statute of limitations had expired (f) on or after June 5, 2015, (g) that was not returned by the postal service. Class 1 shall be referred to as the "Statute of Limitations Class."

73. Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the forms represented by Exhibits A, B, C, D, E, F, G, or H to the complaint in this action, (c) in which Real Time added the amount of previous month's "amount due" for "principal" to the "Total Amount Due," (d) seeking to collect a debt, owed to Real Time, that was assigned to Real Time after default, (e) incurred for personal, family or household purposes, (f) on or after June 9, 2015, (g) that was not returned by the postal service. Class 2 shall be referred to as the "Confusing Payment Breakdown Class."

74. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

75. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692f, and whether Real Time mailed collection letters that were time-barred.

76. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

77. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

78. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**JURY DEMAND**

79. Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 9, 2015

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)

Mark A. Eldridge (SBN 1046105)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com